1  Lionel Z. Glancy (#134180)
   Robert V. Prongay (#270796)
2  Lesley F. Portnoy (#304851)
   **GLANCY PRONGAY & MURRAY LLP**
3  1925 Century Park East, Suite 2100
   Los Angeles, California 90067
4  Telephone: (310) 201-9150
5  Facsimile: (310) 201-9160
   Email: info@glancylaw.com
6
7  *Attorneys for Plaintiff Mikebeb M. Abera*
8  [Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIKEBEB M. ABERA, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:19-cv-03601 |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| PIVOTAL SOFTWARE, INC.; ROBERT MEE; CYNTHIA GAYLOR; PAUL MARITZ; MICHAEL S. DELL; ZANE ROWE; EGON DURBAN; WILLIAM D. GREEN; MARCY S. KLEVORN; KHOZEMA Z. SHIPCHANDLER; MORGAN STANLEY & CO. LLC; GOLDMAN SACHS & CO. LLC; CITIGROUP GLOBAL MARKETS INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED; BARCLAYS CAPITAL INC.; CREDIT SUISSE SECURITIES (USA) LLC; RBC CAPITAL MARKETS, LLC; UBS SECURITIES LLC; WELLS FARGO SECURITIES, LLC; KEYBANC CAPITAL MARKETS INC.; WILLIAM BLAIR & COMPANY, LLC; MISCHLER FINANCIAL GROUP, INC.; SAMUEL A. RAMIREZ & COMPANY, INC.; SIEBERT CISNEROS SHANK & CO.; LLC; and WILLIAMS CAPITAL GROUP, L.P., | **JURY TRIAL DEMANDED** |
| Defendants. | |

CLASS ACTION COMPLAINT

Plaintiff Mikebeb M. Abera ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Pivotal Software, Inc. ("Pivotal Software" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Pivotal Software; and (c) review of other publicly available information concerning Pivotal Software.

**NATURE OF THE ACTION AND OVERVIEW**

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Pivotal Software securities pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's April 2018 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants, under the Securities Act of 1933 (the "Securities Act").

2. Pivotal Software is a cloud-native platform that purports to accelerate and streamline software development by reducing the complexity of building, deploying, and operating new cloud-native applications and modernizing legacy applications. Its Pivotal Application Service ("PAS") is its flagship cloud-native application platform that allows enterprises to continuously deploy and operate custom software securely and at scale across private and public clouds. Its Pivotal Container Service ("PKS") is its container management platform launched with Google and VMware that allows enterprises to deploy and operate Kubernetes, an open-source system for container operations.

3. On April 20, 2018, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 42,550,000 shares of Class A common stock at a price of $15.00 per share. The Company received $544.4 million proceeds, net of underwriting discounts and expenses. The proceeds from the IPO were

purportedly to be used for working capital and other general corporate purposes, including continued investments in the growth of the business.

4. On June 4, 2019, after the market closed, the Company disclosed sales execution issues, as well as a "complex technology landscape," negatively impacted its first quarter 2020 financial results and significantly lowered its full year guidance.

5. On this news, the Company's share price fell $7.65 per share, over 41%, to close at $10.89 per share on June 5, 2019, on unusually heavy trading volume.

6. By the commencement of this action, Pivotal Software stock was trading as low as $10.74 per share, a 28% decline from the $15 per share IPO price.

7. The Registration Statement was false and misleading and omitted to state material adverse facts. Specifically, Defendants failed to disclose to investors: (1) that the Company's PAS product was not compatible with the industry-standard Kubernetes platform; (2) that, as a result, the PAS product faced reduced demand as the industry shifted away from the outdated product; (3) that the Company's PKS product, though compatible with Kubernetes, was severely limited and could not meet large enterprises' needs; (4) that, as a result, the Company could not adequately meet industry demand for a Kubernetes-compatible product that met customers' wide range of needs; (5) that, as a result of the foregoing, the Company was experiencing deferred sales, lengthening sales cycles, and diminished growth; (6) that, as a result, the Company would be forced to reengineer its flagship PAS product to be compatible with Kubernetes; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b). The Company's principal executive offices are in this district.

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

13. Plaintiff Mikebeb M. Abera, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired Pivotal Software securities pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Pivotal Software is incorporated under the laws of Delaware with its principal executive offices located in San Francisco, California. Pivotal Software's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "PVTL."

15. Defendant Robert Mee ("Mee") was, at all relevant times, the Chief Executive Officer ("CEO") and a director of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16. Defendant Cynthia Gaylor ("Gaylor") was, at all relevant times, the Chief Financial Officer of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant Paul Maritz ("Maritz") was Chairman of the Board of Directors of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18. Defendant Michael S. Dell ("Dell") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19. Defendant Zane Rowe ("Rowe") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20. Defendant Egon Durban ("Durban") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21. Defendant William D. Green (Green") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22. Defendant Marcy S. Klevorn ("Klevorn") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23. Defendant Khozema Z. Shipchandler ("Shipchandler") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24. Defendants Mee, Gaylor, Maritz, Dell, Rowe, Durban, Green, Klevorn, Shipchandler are collectively referred to hereinafter as the "Individual Defendants."

25. Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as an underwriter for the Company's IPO.

26. Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter for the Company's IPO.

27. Defendant Citigroup Global Markets Inc. ("Citigroup") served as an underwriter for the Company's IPO.

28. Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") served as an underwriter for the Company's IPO.

29. Defendant Barclays Capital Inc. ("Barclays") served as an underwriter for the Company's IPO.

30. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter for the Company's IPO.

31. Defendant RBC Capital Markets, LLC ("RBC Capital") served as an underwriter for the Company's IPO.

32.     Defendant UBS Securities LLC ("UBS") served as an underwriter for the Company's IPO.

33.     Defendant Wells Fargo Securities, LLC ("Wells Fargo") served as an underwriter for the Company's IPO.

34.     Defendant KeyBanc Capital Markets Inc. ("KeyBanc") served as an underwriter for the Company's IPO.

35.     Defendant William Blair & Company, LLC ("William Blair") served as an underwriter for the Company's IPO.

36.     Defendant Mischler Financial Group, Inc. ("Mischler") served as an underwriter for the Company's IPO.

37.     Defendant Samuel A. Ramirez & Company, Inc. ("Ramirez & Co.") served as an underwriter for the Company's IPO.

38.     Defendant Siebert Cisneros Shank & Co., LLC ("Siebert") served as an underwriter for the Company's IPO.

39.     Defendant Williams Capital Group, L.P. ("Williams Capital") served as an underwriter for the Company's IPO.

40.     Defendants Morgan Stanley, Goldman Sachs, Citigroup, Merrill Lynch, Barclays, Credit Suisse, RBC Capital, UBS, Wells Fargo, KeyBanc, William Blair, Mischler, Ramirez & Co., Siebert, and Williams Capital are collectively referred to hereinafter as the "Underwriter Defendants."

**CLASS ACTION ALLEGATIONS**

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Pivotal Software securities issued in connection with the Company's IPO. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

42. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Pivotal Software's common shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Pivotal Software common stock were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Pivotal Software or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

45. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Pivotal Software; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

46. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the

CLASS ACTION COMPLAINT
6

wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS
### Background

47. Pivotal Software is a cloud-native platform that purports to accelerate and streamline software development by reducing the complexity of building, deploying, and operating new cloud-native applications and modernizing legacy applications. Its Pivotal Application Service ("PAS") is its flagship cloud-native application platform that allows enterprises to continuously deploy and operate custom software securely and at scale across private and public clouds. Its Pivotal Container Service ("PKS") is its container management platform launched with Google and VMware that allows enterprises to deploy and operate Kubernetes, an open-source system for container operations.

### The Company's False and/or Misleading
### Registration Statement and Prospectus

48. On April 18, 2018, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement. The Registration Statement was declared effective on April 19, 2018.

49. On April 20, 2018, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold 42,550,000 shares of Class A common stock at a price of $15.00 per share. The Company received $544.4 million proceeds, net of underwriting discounts and expenses. The proceeds from the IPO were purportedly to be used for working capital and other general corporate purposes, including continued investments in the growth of the business.

50. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

51. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

52. Defendants were required to disclose material information in the Registration Statement for at least three independent reasons. First, Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303 ("Item 303"), requires disclosure of any known events or uncertainties that at the time of the IPO had caused or were reasonably likely to materially impact the Company's future operating results and prospects. The undisclosed increasing competition, increasingly apparent obsolescence of its primary offerings, competitive disadvantages hampering its sales force, and consequently deferred sales, lengthening sales cycles, diminished growth, and other financial metrics, were likely to (an in fact did) materially and adversely affect Pivotal's future results and prospects.

53. Second, Item 503 of SEC Regulation S-K, 17 C.F.R. § 229.503 ("Item 503"), requires the "Risk Factors" section of the Registration Statement to disclose the most significant factors that make the offering risky or speculative and to adequately describe the risks. The Registration Statement's discussion of risk factors did not even mention, much less adequately describe, the risk posed by the increasing competition, increasingly apparent obsolescence of its primary offerings, competitive disadvantages hampering its sales force, and consequently deferred sales, lengthening sales cycles, diminished growth, and other financial metrics, nor the likely and consequent materially adverse effects on the Company's future results, share price, and prospects.

54. Third, Defendants' failure to disclose the then-increasing competition, increasingly apparent obsolescence of its primary offerings, competitive disadvantages hampering its sales force, and consequently deferred sales, lengthening sales cycles, diminished growth, and other financial metrics, much less the likely material effects these omissions would have on Pivotal's share price, rendered false and misleading the Registration Statement's many references to known "*risks*" which "*if*" occurring "*may*" or "*could*" materially affect the Company. These "risks" had already materialized at the time of the IPO.

55. Regarding the Company's sales cycles, the Registration Statement stated, in relevant part:

> ***Our sales cycles can be long, unpredictable and vary seasonally, which can cause significant variation in the number and size of transactions that close in a particular quarter.***
>
> Our results of operations may fluctuate, in part, because of the resource-intensive nature of our sales efforts, the length and variability of the sales cycle for our platform and the difficulty in making short-term adjustments to our operating expenses. Many of our customers are large enterprises, whose purchasing decisions, budget cycles and constraints and evaluation processes are unpredictable and out of our control. Further, the timing of our sales is difficult to predict. The length of our sales cycle, from initial evaluation to payment for our subscriptions can range from several months to well over a year and can vary substantially from customer to customer. Our sales efforts involve significant investment in resources in field sales, partner development, marketing and educating our customers about the use, technical capabilities and benefits of our platform and services. Customers often undertake a prolonged evaluation process, which frequently involves not only our platform but also those of other companies or the consideration of internally developed alternatives including those using open-source software. Some of our customers initially deploy our platform on a limited basis, with no guarantee that these customers will deploy our platform widely enough across their organization to justify our substantial pre-sales investment. As a result, it is difficult to predict exactly when, or even if, we will make a sale to a potential customer or if we can increase sales to our existing customers. Large individual sales have, in some cases, occurred in quarters subsequent to those we anticipated, or have not occurred at all. If our sales cycle lengthens or our substantial upfront investments do not result in sufficient revenue to justify our investments, our operating results could be adversely affected.
>
> We have experienced seasonal and end-of-quarter concentration of our transactions and variations in the number and size of transactions that close in a particular quarter, which impacts our ability to grow revenue over the long term and plan and manage cash flows and other aspects of our business and cost structure. Our transactions vary by quarter, with the fourth quarter typically being our largest. In addition, within each quarter, a significant portion of our transactions occur in the last two weeks of that quarter. If expectations for our business turn out to be inaccurate, our revenue growth may be adversely affected over time and we may not be able to adjust our cost structure on a timely basis and our cash flows may suffer.

56. Regarding changes to the technology landscape, the Registration Statement stated, in relevant part:

> ***We may not be able to respond to rapid technological changes with new offerings, which could have a material adverse effect on our sales and profitability.***

> The markets for our software platform are characterized by constant technological changes, changing open-source software platform technologies and standards, changing customer needs and frequent new software product introductions and improvements. The introduction of third-party solutions embodying new technologies and the emergence of new industry standards, including any open-source projects that have become widely adopted, could make our existing and future software offerings obsolete and unmarketable.

57. The Registration Statement was false and misleading and omitted to state material adverse facts. Specifically, Defendants failed to disclose to investors: (1) that the Company's PAS product was not compatible with the industry-standard Kubernetes platform; (2) that, as a result, the PAS product faced reduced demand as the industry shifted away from the outdated product; (3) that the Company's PKS product, though compatible with Kubernetes, was severely limited and could not meet large enterprises' needs; (4) that, as a result, the Company could not adequately meet industry demand for a Kubernetes-compatible product that met customers' wide range of needs; (5) that, as a result of the foregoing, the Company was experiencing deferred sales, lengthening sales cycles, and diminished growth; (6) that, as a result, the Company would be forced to reengineer its flagship PAS product to be compatible with Kubernetes; and (7) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**The Subsequent Disclosure**

58. On June 4, 2019, after the market closed, the Company disclosed sales execution issues, as well as a "complex technology landscape" that negatively impacted its first quarter 2020 financial results and significantly lowered its full year guidance. In a press release, the Company stated, in relevant part:

> Pivotal Software, Inc. (NYSE: PVTL), a leading cloud-native platform provider, today reported results for the first quarter fiscal year 2020 ended May 3, 2019.
>
> "We had a solid start to the year with 43% subscription growth and customer expansions continued to fuel our strong net expansion rate of 143%. However, sales execution and a complex technology landscape impacted the quarter," said Rob Mee, CEO of Pivotal Software. "We have taken steps to improve our execution, and remain confident in our strategy and market opportunity for the long term. Pivotal continues to be the best partner for organizations that want to modernize their most important applications."

**First Quarter Fiscal 2020 Financial Results**

**Revenue**: Subscription revenue was $128.9 million, an increase of 43% year over year. Total revenue was $185.7 million, an increase of 19% year over year.

**Operating Loss**: GAAP operating loss was $34.9 million, or 19% of total revenue, compared to a loss of $33.5 million in Q1 of last year. Non-GAAP operating loss was $11.8 million, or 6% of total revenue, compared to a loss of $21.0 million in Q1 of last year.

**Net Loss**: GAAP net loss was $31.7 million, compared to a loss of $32.5 million in Q1 of last year. GAAP net loss per share was $0.12, compared to a loss of $0.31 in Q1 of last year. Non-GAAP net loss was $8.6 million, compared to a loss of $23.3 million in Q1 of last year. Non-GAAP net loss per share was $0.03, compared to a loss of $0.10 in Q1 of last year.

**Cash Flow**: Operating cash flow was $122.2 million compared to operating cash flow of $4.5 million in Q1 of last year.

**Cash and cash equivalents** were $854.2 million as of May 3, 2019.

59. During a conference call held to discuss these results, Defendant Mee attributed the sales execution challenges to the Company's disjointed PAS/PKS offering and emphasized that Pivotal would thus be forced to reengineer its primary PAS on Kubernetes.

60. Analysts were shocked by these revelations and asserted that the Company's "management team does not have a handle on the underlying issues negatively impacting its sales cycles and the activity in the field."

61. On this news, the Company's share price fell $7.65 per share, over 41%, to close at $10.89 per share on June 5, 2019, on unusually heavy trading volume.

62. By the commencement of this action, Pivotal Software stock was trading as low as $10.74 per share, a 28% decline from the $15 per share IPO price.

### FIRST CLAIM

### Violation of Section 11 of the Securities Act
### (Against All Defendants)

63. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

64.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

65.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

66.     Pivotal Software is the registrant for the IPO.  The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

67.     As issuer of the shares, Pivotal Software is strictly liable to Plaintiff and the Class for the misstatements and omissions.

68.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

69.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

70.     Plaintiff acquired Pivotal Software shares pursuant and/or traceable to the Registration Statement for the IPO.

71.     Plaintiff and the Class have sustained damages.  The value of Pivotal Software common stock has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

### Violation of Section 15 of the Securities Act
### (Against the Individual Defendants)

72.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

73.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

74.     The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Pivotal Software within the meaning of Section 15 of the Securities Act.  The Individual

1  Defendants had the power and influence and exercised the same to cause Pivotal Software to
2  engage in the acts described herein.
3      75.    The Individual Defendants' positions made them privy to and provided them with
4  actual knowledge of the material facts concealed from Plaintiff and the Class.
5      76.    By virtue of the conduct alleged herein, the Individual Defendants are liable for the
6  aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: June 20, 2019         GLANCY PRONGAY & MURRAY LLP

By:  */s/ Lesley F. Portnoy*
Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
Charles H. Linehan (#307439)
Pavithra Rajesh (#323055)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160

*Attorneys for Plaintiff Mikebeb M. Abera*

CLASS ACTION COMPLAINT
13

# SWORN CERTIFICATION OF PLAINTIFF

# PIVOTAL SOFTWARE, INC. SECURITIES LITIGATION

I, Mikebeb M. Abera individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Pivotal Software, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Pivotal Software, Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

6/18/2019
_____
Date

DocuSigned by:
*Mikebeb Abera*
D964B250E82644E...
_____
Mikebeb M. Abera

**Mikebeb M. Abera's Transactions in Pivotal Software, Inc. (PVTL)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 6/4/2019 | Bought | 500 | $18.8817 |
| 6/4/2019 | Bought | 200 | $18.2900 |
| 6/4/2019 | Bought | 50 | $18.2900 |